No. 56,928

LAKESIDE VILLAGE IMPROVEMENT DISTRICT, JEFFERSON COUNTY, KANSAS, *Appellant*, v. JEFFERSON COUNTY, KANSAS, *Appellees.*

(697 P.2d 1286)

Opinion filed April 5, 1985.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause and was on the brief for appellant.

*James D. Waugh,* of Cosgrove, Webb & Oman, of Topeka, argued the cause, and *J. Craig Anderson,* of the same firm, and *John K. Bork,* county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a declaratory judgment action seeking determination of whether plaintiff Lakeside Village Improvement District, Jefferson County, Kansas, or defendant Jefferson County, Kansas, is responsible for payment of certain bonds issued by the Improvement District. The district court held all the bonds were valid obligations of the District and none were valid obligations of Jefferson County. Lakeside Village Improvement District appeals therefrom.

The case was tried upon stipulated facts; said stipulation is reproduced in pertinent part as follows:

"1. Plaintiff is an improvement district organized by order of the Board of County Commissioners of Jefferson County, Kansas on June 12, 1970, pursuant to Chapter 180, 1945 Laws of Kansas, and any amendments thereto and supplements thereof as of June 12, 1970. . . . (On August 4, 1972, the name of Jefferson County Improvement District No. 1 was changed to Lakeside Village Improvement District by order of the Board of County Commissioners of Jefferson County, Kansas).

. . . .

"4. Between July 1, 1974 and July 1, 1976, plaintiff district caused to be issued and sold eight bond issues, as follows:

    a. Lakeside Village Improvement District Water Improvement Bonds, Series 1975, dated April 1, 1975, in the aggregate principal amount of $42,600.

    b. Lakeside Village Improvement District Internal Improvement Bonds, Series 1975, dated May 1, 1975 in the aggregate principal amount of $99,820.

    c. Lakeside Village Improvement District Water Improvement Bonds, Series 1975-2, dated August 1, 1975 in the aggregate principal amount of $34,439.28.

    d. Lakeside Village Improvement District Internal Improvement Bonds, Series 1975-2, dated August 1, 1975, in the aggregate principal amount of $98,283.58.

    e. Lakeside Village Improvement District General Obligation Bond, Series 1976-A (roads), dated March 1, 1976 in the aggregate principal amount of $99,431.83.

f. Lakeside Village Improvement District General Obligation Bond, Series 1976-B (park), dated March 1, 1976 in the aggregate principal amount of $44,744.31.

g. Lakeside Village Improvement District General Obligation Bonds, Series 1976-C (sanitary waste water) dated March 1, 1976 in the aggregate principal amount of $79,546.07.

h. Lakeside Village Improvement District General Obligation Bonds, Series 1976-D (water), dated March 1, 1976 in the aggregate principal amount of $99,431.83.

. . . .

"7. Subsequent to July 1, 1976, plaintiff district caused to be issued and sold three bond issues, as follows:

a. Lakeside Village Improvement District General Obligation Bonds, Series 1978-1 (roads), dated June 1, 1978, in the aggregate principal amount of $46,700.27.

b. Lakeside Village Improvement District General Obligation Bonds, Series 1978-2 (parks), dated June 1, 1978, in the aggregate principal amount of $37,852.85.

c. Lakeside Village Improvement District General Obligation Bonds, Series 1980-1 (water and sanitation), dated September 1, 1980, in the aggregate principal amount of $98,373.00.

. . . .

"8. With respect to the bond issues referred to in paragraph 7 above, plaintiff district did not request, and defendant county did not approve, that the bond issues be general obligations of the county, as contemplated by K.S.A. 19-2770.

. . . .

"10. Despite the efforts by defendant county in attempting to collect the special assessments which have been levied in accordance to the actions shown to have been taken in the transcripts, and pursuant to law, insufficient moneys will be collected in order to keep the bond issues (or some of them) from being in default in the near future.

"11. Plaintiff district has attempted to obtain authority from the Board of Tax Appeals to issue no-fund warrants in order to

keep the above bond issues from the danger of being in default, but the Board of Tax Appeals has refused and will continue to refuse to grant permission to issue no-fund warrants unless the Board knows which of the parties (plaintiff district or defendant county) will be liable for the payment of such no-fund warrants.

"12. A genuine, actual and justiciable controversy exists between the parties hereto, the question being whether or not the bond issues listed in paragraphs 4 and 7 above, or any of them, constitute general obligation bonds of defendant county, payable from the levy of special assessments against the property benefited, and if not so paid, by ad valorem tax which may be levied without limit as to rate or amount on all the taxable tangible property located within the county. Plaintiff district claims, and defendant county denies, that all of such bonds are such general obligation bonds."

The bonds enumerated in paragraph four of the stipulation (bearing 1975 and 1976 dates) were issued by Lakeside Village Improvement District under the authority of K.S.A. 19-2770 (Weeks) as it existed from March 18, 1974, to July 1, 1976. This 1974 version of K.S.A. 19-2770 provides:

"That whenever the *board of directors of any improvement district* shall under the authority vested in it by this act, cause any public work or improvement to be made, payment for which is to be made by levy of special assessments, it *may in its discretion,* instead of levying the entire assessment therefor at one time, provide for the payment of the same by installments, and *authorize the issuance of general obligation bonds of the county* therefor payable in installments of equal amounts each year, for such number of years as may be deemed advisable. If such installments are deemed proper by the board of directors they shall cause notice of the method of payment to be inserted in the official published notice as set out in the next preceding section. Such improvement bonds shall be issued as provided by law, but no bonds shall be issued under this provision until thirty days after the last day of the protest period as set out in the next preceding section; and during said thirty days any person against whose property any special assessment shall have been levied may pay the same in full and thereby discharge his property from the lien thereof."

The bonds enumerated in paragraph seven of the stipulation (bearing 1978 and 1980 dates) were issued by Lakeside Village Improvement District under the authority of K.S.A. 19-2770 as amended in 1976 (our present statute). K.S.A. 19-2770 provides:

"(a) Whenever the *board of directors of any improvement district* shall under the authority vested in it by this act, cause any public work or improvement to be

made, payment for which is to be made by levy of special assessments, it *may in its discretion*, instead of levying the entire assessment therefor at one time, provide for the payment of the same by installments and *may issue improvement bonds of the district* therefor. Prior to the issuance of any such improvement bonds, the board of directors shall cause notice thereof to be published as provided in K.S.A. 19-2769. Such improvement bonds shall be issued as provided by law, but no bonds shall be issued under the provision of this act until thirty (30) days after the last day of the protest period as set out in K.S.A. 19-2769. During said thirty (30) days any person against whose property any special assessment shall have been levied may pay the same in full and thereby discharge such property from the lien thereof. Any improvement bonds issued under the authority of this subsection shall be payable from the levy of special assessments against the property benefited and, if not so paid, by the levy of an ad valorem tax on all taxable tangible property located within such improvement district, in an amount sufficient to pay the principal of and interest on such improvement bonds.

"(b) *In lieu of issuing improvement bonds of the district, the board of directors may request the board of county commissioners* of the county in which such improvement district is located *to issue general obligation bonds of the county. If the board of county commissioners approves, it may issue general obligation bonds of the county therefor,* which shall be payable from the levy of special assessments against the property benefited and, if not so paid, by the levy of an ad valorem tax on all taxable tangible property located within the county in an amount sufficient to pay the principal of and interest on such general obligation bonds." (Emphasis supplied.)

The trial court, in its memorandum opinion, held:

## "FINDINGS OF FACT

"1. All of the facts and matters contained in the stipulation heretofore filed in this case are adopted as a part of these findings of fact.

"2. That the eleven bond issues involved in this case were issued by plaintiff, a municipality, for public purposes.

"3. That the proceeds of said bond issues were used for various public purposes, and all of said improvements constructed with the proceeds of said bonds inured to the benefit of the plaintiff; the improvements constructed with the bond proceeds were both a benefit and a detriment to defendant County.

"4. That the following two issues of bonds by plaintiff, Series 1978-1 (Roads) in the amount of $46,700.27, and Series 1978-2 (Parks) in the amount of $37,852.85, failed to contain the recital required by K.S.A. 19-2771 that said bonds are a general obligation of the county; that all of the other bond issues involved in this litigation contained such a recital.

"5. That none of the eight series of bonds issued between July 1, 1974, and July 1, 1976, were issued in the name of the defendant, but each such bond series stated that it was a general obligation of defendant.

"6. With respect to the eight bond issues which were issued between July 1, 1974, and July 1, 1976;

    a. None of the bonds are signed by officials of defendant County as required by K.S.A. 10-105.

    b. None of the bonds contain any promise by defendant County to make any payment.

    c. None of the bonds contain an acknowledgment of indebtedness by defendant County.

    d. None of the bonds contain a pledge by defendant County of its full faith and credit.

    e. None of the bonds were registered by the County Clerk, as required by K.S.A. 10-107.

"7. With respect to the three bond issues which were issued subsequent to July 1, 1976, in only one of them (the bonds described in subparagraph c of paragraph 7 of the stipulation) do the bonds recite that they are general obligations of the County. In all three issues, the bonds recite that the bonds and the interest thereon are to be paid by the plaintiff District, as required by K.S.A. 10-112. The opinions with respect to all three bond issues state that they are payable from ad valorem taxes which may be levied without limit as to rate or amount upon all the taxable tangible property within plaintiff District.

## "CONCLUSIONS OF LAW

"1. The County has properly raised the constitutional issues and has not waived those issues.

"2. K.S.A. 19-2770 as it existed between July 1, 1974 and July 1, 1976 is declared unconstitutional under the facts of this case, as being an improper delegation of legislative power.

"3. The eleven bond issues involved in this action were issued by plaintiff District, and are valid general obligations of plaintiff District, none of said issues are general obligations of defendant County.

"4. The County is not required to levy any taxes on the taxable tangible property outside of the boundaries of Plaintiff

District to pay the principal of and interest on the bonds of the eleven bond issues which are the subject of this action.

"5. Judgment should be entered in favor of the defendant and against the plaintiff based upon the foregoing findings of fact.

"IT IS THEREFORE ORDERED, DECREED AND ADJUDGED that judgment be and the same is hereby entered in favor of defendant and against plaintiff. That said judgment shall consist of the findings of fact and conclusions of law hereinabove set forth as if fully set forth.

"IT IS FURTHER ORDERED that all costs of this action be and the same are hereby assessed against plaintiff."

We turn now to the issues raised by Lakeside Village Improvement District in its appeal from the judgment of the trial court. It should be noted that Lakeside Village Improvement District does not claim error in any of the trial court's findings of fact—the issues are wholly concerned with the trial court's conclusions of law.

Eleven series of bonds are involved. Eight of the bond issues were issued pursuant to an earlier version of K.S.A. 19-2770 and the balance of the bond issues were issued pursuant to the statute in its present form. Different questions on appeal arise as to bonds issued under the differing versions of the statute. We shall first consider the questions relating to the bonds issued under K.S.A. 19-2770 in the form in effect from March 18, 1974, to July 1, 1976. Although the memorandum decision of the trial court (previously set forth) notes the absence of certain data in these bonds, a sample bond from one of the issues is reprinted at the conclusion of this opinion to assist in visualizing exactly what is contained in the bonds.

Lakeside Village Improvement District issued the bonds, promised to pay, pledged the district's full faith, credit and resources in payment thereof, and Lakeside Village Improvement District officials executed the bonds. The bonds are a contract between Lakeside Village Improvement District and the bond purchasers. By contrast, Jefferson County did not issue the bonds, made no promise to pay, did not pledge the full faith, credit and resources of the county and the bonds were not signed by county officials. Jefferson County entered into no contract with bond purchasers. One theory on which Lakeside Village

Improvement District seeks to impose liability on the county for payment of the bonds is that the inclusion of the phrase found in the second full paragraph of the bonds, "[a]nd this is a General Obligation of Jefferson County," results, per se, in the bonds having been purchased in reliance on these bonds being Jefferson County general obligation bonds. The bonds speak for themselves and clearly show they are Lakeside Village Improvement District bonds. This point is without merit.

Next, the improvement district argues K.S.A. 19-2770, as it existed at the time of the eight bond issues, makes these issues Jefferson County general obligation bonds. The trial court held the statute to be an unconstitutional delegation of authority. That is, the legislature improperly delegated authority to an improvement district to obligate the county, a larger governmental entity. For convenience, K.S.A. 19-2770 in the applicable form is repeated:

"That whenever the *board of directors of any improvement district* shall under the authority vested in it by this act, cause any public work or improvement to be made, payment for which is to be made by levy of special assessments, it *may in its discretion*, instead of levying the entire assessment therefor at one time, provide for the payment of the same by installments, and *authorize the issuance of general obligation bonds of the county* therefor payable in installments of equal amounts each year, for such number of years as may be deemed advisable. If such installments are deemed proper by the board of directors they shall cause notice of the method of payment to be inserted in the official published notice as set out in the next preceding section.Such improvement bonds shall be issued as provided by law, but no bonds shall be issued under this provision until thirty days after the last day of the protest period as set out in the next preceding section; and during said thirty days any person against whose property any special assessment shall have been levied may pay the same in full and thereby discharge his property from the lien thereof."

Did the legislature intend to grant such authority? We believe not. The result of the granting of unbridled authority to municipalities to obligate their respective counties would be total chaos. The ability of counties to make improvements, borrow money and, indeed, even to function, would be seriously impaired. A statute should never be given a construction that leads to uncertainty, injustice or confusion, if it is possible to construe it otherwise. *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984).

When reviewing the constitutionality of a statute this court must presume the statute is constitutional; all doubts must be

resolved in favor of the statute's validity; and before a statute may be stricken down, it must be clearly shown that it violates the Constitution. It is the court's duty to uphold the statute under challenge, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 694 P.2d 462 (1985).

The issuance of bonds by a governmental entity is a complex and highly technical procedure. See K.S.A. 10-101 *et seq.* County bonds must be signed by the chairperson of the board of county commissioners and attested by the clerk under the seal of the county. K.S.A. 1984 Supp. 10-105. It is unreasonable to assume the legislature intended that an improvement district could obligate the county without any acceptance by or even knowledge of the obligations by the county.

It is significant that this version of K.S.A. 19-2770 was only in effect two years. Effective July 1, 1976, the legislature amended the statute by: (1) eliminating the language allegedly authorizing an improvement district, in its own discretion, to issue general obligation bonds of the county; and (2) adding a procedure whereby an improvement district could make application to the board of county commissioners for the issuance of general obligation bonds of the county. Such bonds, if approved by the county, would be issued by the county.

It is a fundamental rule of statutory construction, to which all others are subordinate, that the purpose or intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. *School District v. Board of County Commissioners*, 201 Kan. 434, 441 P.2d 875 (1968).

We believe the proper construction of K.S.A. 19-2770 in the form in effect from March 18, 1974, to July 1, 1976, is that the emphasized portion of the following clause "authorize the issuance of general obligation bonds *of the county*" was not intended as a grant of authority to improvement districts to obligate the counties on the improvement district bonds and is, for all practical purposes, meaningless surplusage.

The trial court held that the eight bond series issued by the Improvement District in 1975 and 1976 were valid obligations of the district and not county obligations. We agree with this result.

However, the trial court based its decision, at least in part, upon its holding that K.S.A. 19-2770 in the form in effect between March 18, 1974, and July 1, 1976, was unconstitutional. The trial court's determination of unconstitutionality was based upon the provision in the statute which we have now construed as mere surplusage. Therefore, the portion of the trial court's decision relative to unconstitutionality is disapproved.

The three bond series issued after July 1, 1976 could, by the provisions of the version of K.S.A. 19-2770 then (and now) in effect, be general obligation bonds of Jefferson County only upon application to, approval of, and issuance by Jefferson County. No such application was made or approval obtained, and the bonds were not issued by the county. Clearly the district court did not err in considering these three bond issues were valid obligations of Lakeside Village Improvement District and not obligations of Jefferson County.

The judgment of the district court is affirmed as modified.