No. 59,739

BRADLEY M. HARRISON, a Minor, by and through his Next Friends and Natural Parents, MICHAEL L. and MARLA K. HARRISON, and MICHAEL L. and MARLA K. HARRISON, *Plaintiffs-Appellees,* v. LLOYD O. LONG, M.D., *Defendant-Appellant.*

(734 P.2d 1155)

Opinion filed March 27, 1987.

*Laurin D. Quiat,* of Cogswell and Wehrle, of Denver, Colorado, argued the cause, and *Martha C. Reps,* of the same firm, and *Jeffrey A. Mason,* of Foust and Vignery, of Goodland, were with him on the briefs for appellant.

*Thomas L. Theis,* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of Topeka, argued the cause, and *Jeffrey W. Jones,* of the same firm, and *Derenda J. Mitchell,* of Kansas Insurance Department, of Topeka, were with him on the brief for intervenor Fletcher Bell, Commissioner of Insurance.

No appearance by appellees.

The opinion of the court was delivered by:

LOCKETT, J.: The appellant, Lloyd O. Long, M.D., a licensed physician, challenges the constitutionality of the Health Care Provider Insurance Act, K.S.A. 40-3401 *et seq.* (Ensley 1981). Dr. Long contends that the Act deprived him of a property right—the right to defend himself. The district court found the Act constitutional. Dr. Long appeals.

Dr. Long is a physician licensed to practice medicine in Kansas. On June 28, 1984, Bradley M. Harrison, by and through his parents, filed a medical malpractice action against Dr. Long in Sherman County District Court. The action arose out of Dr. Long's medical treatment of Bradley in February of 1983.

After investigating the medical malpractice claim against Dr. Long, Long's insurance carrier, St. Paul Fire and Marine Insurance Company (St. Paul), determined to settle its liability rather than defend the claim against Dr. Long. St. Paul notified the Kansas Health Care Stabilization Fund (Fund) of its decision. The Fund and the claimant then entered into negotiations and reached a settlement.

The settlement was approved by the Sherman County District Court over Dr. Long's objections. Dr. Long filed a motion for relief from the journal entry contending that part of the Health Care Provider Insurance Act, which allows the Fund to settle actions over the objections of the defendant physician, is unconstitutional. The district court found the Act constitutional. Dr. Long appeals. The Fund was allowed to intervene in the appeal.

The Act was passed by the 1976 legislature as a partial response to the increasing pressure of what was termed a national medical malpractice crisis. Although repeatedly amended since its enactment, statutory references to the Act in this opinion will be to K.S.A. 40-3401 et seq. (Ensley 1981), which was in effect when this cause of action arose. Under the Act, every resident health care provider, including physicians, is required to maintain a policy of professional liability insurance with a minimum liability of $100,000 per occurrence and $300,000 annual aggregate. (After July 1, 1984, the minimum liability limit was increased to $200,000 and $600,000.) K.S.A. 40-3402(a). The Fund is responsible for paying that amount of any judgment in excess of the basic coverage of the resident health care provider. K.S.A. 40-3403(b)(1). The resident health care providers pay an annual surcharge to the Fund to qualify for the excess coverage. K.S.A. 40-3404(a).

If a physician is sued for medical malpractice, his liability insurer initially defends the action. If the physician's basic insurer agrees to tender the limits of its coverage to settle a

claim, but that claim exceeds the amount of such coverage, the insurance commissioner is authorized to negotiate with the claimant an amount in excess of the liability insurer's coverage to be paid out of the Fund. In the event the Fund and the claimant agree upon the amount of compensation to be paid by the Fund, the claimant must then file a petition in the court where the underlying action is pending for approval of the agreement. Following a hearing, the court may approve the settlement between the claimant and the Fund if the settlement is found to be valid, just, and equitable. K.S.A. 40-3410.

## 1. Standing

The Fund claims that Dr. Long has no standing to appeal because, under the settlement agreement, St. Paul and the Fund are responsible for the payment to the claimant. The Fund argues that standing requires the coexistence of three factors: (1) injury in fact to the party; (2) "individuated" injury; and (3) causation in fact, citing *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 57 L. Ed. 2d 595, 98 S. Ct. 2620, (1978). The Fund maintains that, because Dr. Long is without injury, he has no standing to sue.

Standing has been called one of the most amorphous concepts in the entire domain of public law. Annot., 50 L. Ed. 2d 902, 904. The United States Supreme Court has stated that, in its constitutional dimension, standing imparts justiciability: whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III of the U.S. Constitution. The court has emphasized that this is the threshold question in every federal case determining the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975).

Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Warth v. Seldin*, 422 U.S. .at 498-99. "Standing to sue" means that a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1003, 667 P.2d 879 (1983). To have

standing, Dr. Long must show that he personally suffered some injury and that there was some causal connection between the claimed injury and the challenged conduct.

Dr. Long argues that he has standing to challenge the constitutionality of the Act because he has sustained actual injury as a result of the settlement of the suit. He contends the settlement approved by the court resulted in an increase of his annual surcharge to the Fund by 400 percent since 1984 and, in addition, has caused injury to his reputation at the local hospitals. On future malpractice insurance applications, he is required to report any suits that have been filed against him for malpractice and the resulting settlements of those suits. Dr. Long argues that, but for the Act, he would have had an opportunity to defend himself and present his defense to the alleged malpractice in a court of law.

Under these circumstances, Dr. Long has a sufficient stake in the justiciable controversy to obtain judicial resolution of the controversy.

## 2. Property Rights

Dr. Long contends that the Act deprives him of a property right—the right to defend himself in court—and since the constitution of this state has made access to the courts an entitlement, the legislature may not now deprive him of his right to defend himself by denying him such access. The Fund contends that the right to defend oneself in court is not a protected property interest.

When reviewing the constitutionality of a statute, the appellate court must presume the statute is constitutional; all doubts must be resolved in favor of the statute's validity; and before a statute may be stricken down, it must be clearly shown that it violates the Constitution. It is the court's duty to uphold the statute under challenge, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that must be done. *Lakeside Village Improvement Dist. v. Jefferson County*, 237 Kan. 106, 697 P.2d 1286 (1985).

The Fourteenth Amendment to the United States Constitution provides that no state can "deprive any person of life, liberty, or property, without due process of law." Section 18 of the Bill of Rights of the Kansas Constitution provides:

"Justice Without Delay. All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

When an interest involving life, liberty, and property is implicated, the right to some kind of prior hearing is mandated because of due process considerations emanating from the Fourteenth Amendment. However, a protected due process right must encompass the type of interest recognized under the due process clause of the Fourteenth Amendment. *Sinclair v. Schroeder*, 225 Kan. 3, 8, 586 P.2d 683 (1978).

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).

"Property," as that term has been construed within the constitutional guaranty against the deprivation of property without due process, includes various rights and interests, such as a cause of action, including a chose in action; contract rights, including possessory interests in a chattel under a conditional sales contract; a franchise; a future vested estate; the respective rights of income account and principal account under a trust; patent rights; trade secrets; the good will of a business; and an interest in real property. 16C C.J.S., Constitutional Law § 984.

The due process clause protects vested rights only and has no reference to mere concessions or privileges which the public authorities may control, and bestow, or withhold, at will. Interests which have been held not to be protected by the due process clause include actions for wrongful death, environmental concerns of a general nature, interests in the selection of a trustee, the rights of an unsuccessful bidder for government benefits, a right to a favorable advisory opinion, the right to malpractice insurance, the interests of members in a charitable society, rights in a reputation, utility rates, and medical insurance rates. 16C C.J.S., Constitutional Law § 985.

Dr. Long argues that Section 18 of the Kansas Bill of Rights

makes justice "by due course of law" the public policy of the state; therefore, it creates a protected property right to defend oneself in court against a civil claim for damages. We do not agree.

The constitutional provision guaranteeing to every person a remedy by due course of law for injury done him in person or property means that for such wrongs that are recognized by the law of the land the court shall be open and afford a remedy, or that laws shall be enacted giving a certain remedy for all injuries or wrongs. "Remedy by due course of law," so used, means the reparation for injury ordered by a tribunal having jurisdiction in due course of procedure after a fair hearing. *Neely v. St. Francis Hospital & School of Nursing,* 192 Kan. 716, 719, 391 P.2d 155 (1964).

The right to a cause of action has long been held to be a protected property interest. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982). "[T]he . . . Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed right[s].'" 455 U.S. at 429-30.

There are no cases, however, holding that the right to defend oneself in a civil case is a protected property interest. The common law and the Kansas Code of Civil Procedure both recognize that a plaintiff has the right of action and may dismiss his complaint at law or his bill in equity unless some plain legal prejudice would result to the defendant other than the mere prospect of a second litigation upon the subject matter. A defendant has no absolute right to prevent a voluntary dismissal of the plaintiff's action unless the defendant asserts a counterclaim against the plaintiff. K.S.A. 60-241(a).

A defendant has no constitutionally protected right to require that a plaintiff's action continue for the sole purpose of allowing the defendant to vindicate himself. Under the circumstances, Dr. Long has no constitutionally protected property right to defend himself in court.

### 3. Due Process Rights

Dr. Long claims that he was deprived of his right to defend himself when the Act became effective. We do not agree. Neither the Fourteenth Amendment to the United States Constitution nor Section 18 of the Kansas Bill of Rights constitutionally prohibits changes in the law which affect a person's rights as they existed at common law. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 613, 576 P.2d 221 (1978). While Section 18 provides a broad field for the protection of person, property, and reputation, the vested rights contained therein are subject to change by legislative power, where the change is reasonably necessary in the public interest to promote the general welfare of the people of the state. *Manzanares v. Bell*, 214 Kan. 589, 599, 522 P.2d 1291 (1974).

Dr. Long claims that the right to defend oneself in court is a procedural due process right guaranteed every individual under the Fourteenth Amendment. The Fund counters that (1) if he has such right, Dr. Long waived his procedural right to object to the settlement by the Fund under his contract with St. Paul, and (2) he has no due process property right to defend himself; therefore, the Act does not deprive him of any procedural due process right.

The Act requires Dr. Long to maintain professional liability insurance as a condition of rendering service in this state. Dr. Long contracted with St. Paul for the liability coverage that contained a limitation on the coverage and an agreement that his insurance company could defend or settle any claim covered by the policy without the consent of the doctor. Here, under its contract, St. Paul chose not to defend the Harrisons' claim against Dr. Long but agreed to settle its liability to the claimant within the policy limits and notified the Fund of its intention. The insurance commissioner under the Act was then entitled to negotiate an amount to be paid from the Fund as a settlement or continue to defend the action against Dr. Long. Unlike Dr. Long's contract with his liability carrier, the Act contains no explicit waiver or consent provision which allows the Fund to settle the action with the claimant without the consent of the health care provider.

The power of the State to regulate and license professions is not limited to fitness to practice, but may also include require-

ments to protect and promote the public health, safety, morals, peace, quiet, and law and order. It is the public policy of the State to assure an adequate supply of health care providers and provide protection to patients who may be injured as a result of medical malpractice. Under the Act, it is the Fund, not the provider, which is responsible for paying any difference above the coverage of the liability insurance. It is, therefore, implicit in the Act that the provider relinquish his right to prevent a settlement. To allow physicians to control the defense of malpractice claims against them and reach their own decisions to continue or to settle the action would undermine the whole purpose and the financial structure of the Act.

The Fund also argues that the Act adequately protects Dr. Long's due process rights. To determine the constitutional adequacy of the Act's procedures, identification of the specific dictates of due process generally requires consideration of three distinct factors: (1) the private interest that will be affected by the Act; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

The Act provides certain procedural protections to the provider. K.S.A. 40-3410 provides that once the claimant and the commissioner reach a settlement, a petition is filed by the claimant with the court for approval of the agreement. The court then conducts a hearing at which the claimant, the health care provider, and the Fund may appear. If the court finds the settlement valid, just, and equitable, it will approve the settlement. If the settlement is not approved, the court orders the action to proceed. K.S.A. 40-3411.

Under the procedural framework of the Act, a health care provider is given the opportunity to represent his interests to the court at the settlement hearing, thus maintaining his procedural due process rights under the Act.

St. Paul and the Fund settled the claim against the physician without any personal liability to Dr. Long. Dr. Long has no right

to complain because the action was settled, if the State had a significant overriding countervailing interest.

There is no individual due process right where the State has a countervailing interest of overriding significance. See *State ex rel. Schneider v. Liggett,* 223 Kan. 610. In *Liggett,* this court found that mandatory malpractice insurance bears a rational relationship to the health and welfare of the citizens of this state by not only providing protection to patients who may be injured as a result of medical malpractice, but by assuring that there continues to exist in the state an adequate supply of health care providers. For the same reasons, the provisions of the Act now questioned by Dr. Long are upheld as they provide an overriding state interest in maintaining adequate health care providers in the state, as well as providing sufficient amounts to cover the economic costs of a claimant's injuries caused by medical malpractice.

The provisions of the Kansas Health Care Provider Insurance Act (K.S.A. 40-3401 *et seq.* [Ensley 1981]) do not deprive a health care provider of a property right, *i.e.,* the right to defend an action, or a due process right. The Act does not violate the Fourteenth Amendment to the U.S. Constitution or Section 18 of the Bill of Rights of the Kansas Constitution.

Affirmed.