No. 62,045

RANDY L. HEARN, *et al., Appellants,* v. THE CITY OF OVERLAND PARK, KANSAS, *Appellee.*

(772 P.2d 758)

Opinion filed April 14, 1989.

*Daniel R. Jones,* of Christen, deVries & Pigeon, of Kansas City, Missouri, argued the cause, and *Judith K. Macy,* of Law Offices of Michael W. Laster, of Overland Park, was with him on the briefs for appellants.

*Michael R. Santos,* assistant city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiffs seek to enjoin the City of Overland Park from enforcing an ordinance regulating the ownership of pit bulls within the city. The plaintiffs are thirteen residents of Johnson County, Kansas, who own dogs kept within the City of Overland Park, Kansas. In their petition filed with the district court, the plaintiffs contended that the ordinance was unconstitutionally vague and overbroad, and violated their rights to due process and equal protection of the laws. The petition also included a claim for damages pursuant to 42 U.S.C. § 1983 (1982). The district court upheld the constitutionality of the ordinance, and found it to be a valid and enforceable exercise of the city's police power. The plaintiffs now appeal.

On September 21, 1987, the Overland Park city council adopted an ordinance defining the "pit bull dog" as a "dangerous animal," within the meaning of Overland Park Municipal Code Ch. 6.10. As subsequently amended, the ordinance defines a "pit bull dog" as

"any and all of the following dogs:
  "(a) the Staffordshire Bull Terrier breed of dogs;
  "(b) the American Staffordshire Terrier breed of dogs;
  "(c) the American Pit Bull Terrier breed of dogs;
  "(d) Dogs which have the appearance and characteristics of being predominantly of the breeds of dogs known as Staffordshire Bull Terrier, American Pit Bull Terrier, [or] American Staffordshire Terrier.
"The registration of a dog at any time as a pit bull or any of the dogs listed above shall constitute prima facie evidence the animal is prohibited by this section."

Other sections of the ordinance require the owner of a pit bull dog to restrain the animal indoors or to a confined kennel. If the animal is removed from this environment, it must be secured by a leash and muzzle. The owner is required to prominently display a "Beware of Dog" sign on the premises. The owner is also required to purchase $50,000 in single-incident liability insurance, to compensate for any damage caused by the animal.

The plaintiffs contend that the district court erred in concluding that the ordinance was not impermissibly vague and also in concluding that the plaintiffs had no standing to raise a claim of vagueness. We must, therefore, first determine if the plaintiffs had standing to raise vagueness. The district court found that nine of the plaintiffs had identified their animals as pit bull dogs, and have registered them as such animals with the City of Overland Park, Kansas. As to plaintiffs Barbara LeClerq Boran and William O. Mitchum, the court found that they "at one time registered their dogs as 'pit bulls' with the City of Overland Park, but have since that time had their dogs reidentified by a licensed veterinarian as another breed mix, and as such have no standing in this lawsuit." Finally, the district court found that two plaintiffs, Myrtle LeClerq and Maxine Mitchum, had failed to establish that they owned animals separate and distinct from those owned by Barbara Boran and William Mitchum.

The district court correctly found that nine plaintiffs did not possess standing to raise the present vagueness argument. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *Parker v. Levy*, 417 U.S. 733, 756, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974). Having acknowledged that their animals are pit bull dogs, these plaintiffs cannot complain of the allegedly vague nature of the ordinance. However, such is not the case with regard to the four remaining plaintiffs, William O. Mitchum, Maxine Mitchum, Barbara LeClerq Boran, and Myrtle LeClerq.

That the animals owned by these plaintiffs may once have been registered as pit bull dogs, but subsequently have been reidentified as other breeds, does not establish that they do not fall within the scope of the challenged ordinance. Although identified as another breed, the animals may still fall within Subsection (d) of the portion of the ordinance defining pit bull dogs. Subsection (d) defines as a pit bull dog a dog which has "the appearance and characteristics of being predominantly" those of the other specifically designated breeds. The district court erred in finding these plaintiffs did not have standing to raise vagueness. To resolve the claims of these plaintiffs, therefore, we must turn to the substance of their vagueness claim.

In considering the issues raised in the present appeal, it is necessary to keep in mind the rules relating to the review of the constitutionality of legislation. This court presumes that the challenged legislation is constitutional. All doubts concerning the legislation must be resolved in favor of its validity. Before the legislation may be stricken down, it must clearly appear that it violates the Constitution. It is the duty of the court to uphold the legislation under attack, if possible, rather than defeat it; if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *Lakeside Village Improvement Dist. v. Jefferson County*, 237 Kan. 106, 113-14, 697 P.2d 1286 (1985).

With these rules in mind, we first consider plaintiffs' contention that the district court erred in finding that the city ordinance was not unconstitutionally vague.

Legislation is unconstitutionally vague when one cannot reasonably understand that his contemplated conduct is within the scope of that proscribed by the legislation. See *United States v. Harriss*, 347 U.S. 612, 617, 98 L. Ed. 989, 74 S. Ct. 808 (1954).

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983).

However, "ultimate, god-like precision" is not required by the Constitution. *Miller v. California*, 413 U.S. 15, 28, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). The Constitution "does not require impossible standards"; it is satisfied by statutory language which "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.

The Constitution requires no more." *United States v. Petrillo,* 332 U.S. 1, 7-8, 91 L. Ed. 1877, 67 S. Ct. 1538 (1947). That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. *Miller v. California,* 413 U.S. at 27 n.10; *United States v. Petrillo,* 332 U.S. at 7; *Robinson v. United States,* 324 U.S. 282, 285, 286, 89 L. Ed. 944, 65 S. Ct. 666 (1945); see *United States v. Harriss,* 347 U.S. at 624 n.15.

Because of the strong presumption in favor of the constitutional validity of legislation, statutes are not " 'automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.' " *Parker v. Levy,* 417 U.S. at 757 (quoting *United States v. National Dairy Corp.,* 372 U.S. 29, 32-33, 9 L. Ed. 2d 561, 83 S. Ct. 594 [1963]). In this regard, the United States Supreme Court has noted that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." *Nash v. United States,* 229 U.S. 373, 377, 57 L. Ed. 1232, 33 S. Ct. 780 (1913).

It is important to note that we are not dealing with an ordinance that limits constitutionally protected conduct. Because the present ordinance does not infringe upon explicit constitutional guarantees, such as freedom of speech, the ordinance should be upheld unless it "is impermissively vague in all of its applications." *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 495, 71 L. Ed. 2d 362, 102 S. Ct. 1186, *reh. denied* 456 U.S. 950 (1982). The plaintiffs must establish that the ordinance is unconstitutional on its face, which means it must be demonstrated to be " 'invalid *in toto*—and therefore incapable of any valid application.' " *Hoffman Estates,* 455 U.S. at 494 n.5 (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 39 L. Ed. 2d 505, 94 S. Ct. 1209 [1974]). In order to establish that legislation is unconstitutional on its face, the person challenging the legislation must establish that it is vague " 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Hoffman Estates,* 455 U.S. at 495 n.7 (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 29 L. Ed. 2d 214, 91 S. Ct. 1686 [1971]).

This court has also discussed the requirements for a due process challenge to legislation as impermissibly vague. The test to determine whether a criminal statute is unconstitutional as being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. *State v. Rose*, 234 Kan. 1044, 1045-46, 677 P.2d 1011 (1984); *State v. Lackey*, 232 Kan. 478, 479, 657 P.2d 40 (1983); *State v. Carpenter*, 231 Kan. 235, 237, 642 P.2d 998 (1982); *State v. Huffman*, 228 Kan. 186, 192, 612 P.2d 630 (1980); *State v. Norris*, 226 Kan. 90, 91-92, 595 P.2d 1110 (1979); *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 663, 562 P.2d 65 (1977). A statute is not invalid for vagueness or uncertainty where it uses words of commonly understood meaning. *State v. Rose*, 234 Kan. at 1046; *In re Brooks*, 228 Kan. 541, 544, 618 P.2d 814 (1980); *Kansas City Millwright*, 221 Kan. at 663. At its heart the test for vagueness is a common-sense determination of fundamental fairness. 221 Kan. at 663.

The plaintiffs contend that, owing to the inherent difficulty in identifying the "breed" of a given dog, the city ordinance is impermissibly vague. The plaintiffs contend that the term "breed" is so imprecise that many dog owners will be uncertain whether their animal is covered by the ordinance.

We recognize the difficulty in attempting to identify a dog by breed with absolute certainty. That fact alone does not render an ordinance unconstitutionally vague. Perhaps Justice Potter Stewart articulated the dilemma best in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 12 L. Ed. 2d 793, 84 S. Ct. 1676 (1964):

"I have reached the conclusion, which I think is confirmed at least by negative implication in the Court's decisions since *Roth* and *Alberts*, that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that."

The ordinance at issue identifies three specific breeds of dogs or dogs which "have the appearance and characteristics of being

predominantly of" these breeds. The defendant city introduced evidence that "breed" or "phenotype" is a commonly used and understood term for the physical appearance or description of an animal. The three specific breeds of dogs listed in the city ordinance are generally similar in appearance, and may be identified by their physical characteristics.

In implementing the ordinance, the Overland Park Police Department has adopted rules for the interpretation and implementation of the ordinance. These rules specify that the term "predominantly," in the context of subsection (d) of the ordinance,

"shall mean that the officer has knowledge through identification procedures, admission by owner, keeper, or harborer, or otherwise that the animal is more than fifty percent pit bull. Predominantly shall further mean that the animal exhibits the physical characteristics of a pit bull more than that of any other breed of dog. If an officer cannot determine the predominant breed of the animal in question as pit bull, the animal shall not be subject to the provisions of O.P.M.C. 6.10.020 unless the animal is later positively identified as a pit bull by a licensed veterinarian."

In its memorandum opinion, the district court stated:

"Pit bull dogs are different from other dogs and, because they are different, they are distinguishable. Their physical features include a short, squatty body with developed chest, shoulders, and legs; a large, flat head; muscular neck and a protruding jaw. The appearance of these dogs typifies strength and athleticism. They can climb trees, they have extremely strong jaws and biting power, and they tend to clamp on to something and not let go."

The court noted that the determination of whether a dog is, or is not, a pit bull will be a matter of judgment in a few cases. However, the ordinance, as interpreted by the animal control division of the Overland Park Police Department, applies only to animals in which pit bull dog characteristics predominate. As the court noted:

"There will be instances of mixed breed dogs where it will be difficult or perhaps even impossible to determine whether or not a certain dog falls under the regulations of the ordinance. However, a few questionable cases will not cause a finding of unconstitutionality of an ordinance due to vagueness."

The present ordinance is interpreted to exclude doubtful cases from the scope of its regulation and therefore does not create an impermissibly vague standard.

The New Mexico Court of Appeals upheld a similar local ordinance from a challenge for impermissive vagueness in *Gar-*

*cia v. Village of Tijeras*, 108 N.M. 116, 767 P.2d 355 (Ct. App. 1988). The village ordinance prohibited the ownership or possession in the village of "any dog of the breed known as American Pit Bull Terrier." 108 N.M. at _____, 767 P.2d at 356. The Court of Appeals concluded that there was sufficient evidence in the record to support the findings of the trial court.

"The trial court found that the American Pit Bull Terrier is a recognized breed of dog readily identifiable by laymen. We understand the trial court's finding to have been that the breed can be identified by persons who are not qualified to be dog show judges. . . .

. . . .

"There was testimony at trial that the term 'pit bull' is the generic term for 'American Staffordshire Terrier.' There was also testimony at trial that there is no difference between the American Staffordshire Terrier and the American Pit Bull Terrier.

"In addition, there was testimony that each breed of dog has a typical physical appearance termed as 'phenotype,' and that an unregistered dog can be identified as being of the breed 'American Pit Bull Terrier' by its physical characteristics, or phenotype. Several witnesses testified that they could recognize an American Pit Bull Terrier by its physical characteristics.

"We believe this evidence supports a determination that the breed American Pit Bull Terrier is a breed of dog recognized by its physical appearance. Given our obligation to indulge every presumption in favor of constitutionality, we interpret the term 'known as' in light of the testimony at trial. Thus, we interpret the ordinance to include not only dogs that are registered, but also dogs that are recognizable, as American Pit Bull Terriers or American Staffordshire Terriers." 108 N.M. at _____, 767 P.2d at 357-58.

Similarly, in *State v. Peters*, 534 So. 2d 760 (Fla. Dist. App. 1988), the court rejected a similar vagueness challenge to a local ordinance regulating pit bull dog ownership. The Florida court concluded that the ordinance addressed itself in terms "sufficiently well understood by pit bull owners to enable them to determine whether their dogs fall within the proscription of the ordinance." The issue of whether a particular animal fell within the scope of the ordinance was therefore found to be "a matter of evidence, not constitutional law." 534 So. 2d at 768.

We agree that whether a particular dog comes within the purview of the ordinance is a question of fact to be determined by the evidence. We find, in the present case, that the decision of the district court is supported by substantial competent evidence. See *Farmers State Bank of Ingalls v. Conrardy*, 215 Kan. 334, Syl. ¶ 1, 524 P.2d 690 (1974).

The plaintiffs next contend that the city ordinance is uncon-

stitutionally overbroad, and incorrectly treats as dangerous animals many dogs fundamentally gentle in nature. This court discussed the concept of impermissibly overbroad statutes in *State v. Huffman*, 228 Kan. at 189:

"While closely related, overbreadth and vagueness are distinct concepts. An overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. A vague statute leaves persons of common intelligence to guess at its meaning and whether particular conduct is a crime."

The overbreadth doctrine serves to protect the rights of free expression guaranteed by the Constitution.

"The doctrine is predicated on the sensitive nature of protected expression: 'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.' *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980)." *New York v. Ferber*, 458 U.S. 747, 768-69, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982).

The United States Supreme Court has ruled that "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad." *Schall v. Martin*, 467 U.S. 253, 268 n.18, 81 L. Ed. 2d 207, 104 S. Ct. 2403 (1984).

In the present case, the plaintiffs' right to own pit bull dogs is not guaranteed by the First Amendment. Because the plaintiffs' activities do not fall within the scope of rights guaranteed by the First Amendment, the city ordinance may not be attacked as constitutionally overbroad.

The petition filed by the plaintiffs also contended that the city ordinance was an improper exercise of the city's police power and violated the plaintiffs' substantive due process rights. This court has discussed the permissive scope of the police power in a number of decisions. In *City of Colby v. Hurtt*, 212 Kan. 113, 117, 509 P.2d 1142 (1973), the court stated:

" '[T]he police power may be exerted as a restraint upon private rights of persons or to regulate the use of property, and where appropriate or necessary, prohibit the use of property for certain purposes in aid of the public safety and general welfare, and constitutional limitations form no impediment to its exercise where the regulation is reasonable and bears a fair relationship to the object sought to be attained.' " (Quoting *Martin v. Davis*, 187 Kan. 473, 484, 357 P.2d 782 [1960].

Similarly, in *State ex rel. Stephan v. Lane*, 228 Kan. 379, 614 P.2d 987 (1980), the court discussed the nature of the police power and the test to be used in determining whether legislation

in furtherance of the police power unconstitutionally violates substantive due process guarantees:

"The police power is wide in its scope and gives the governmental body broad powers to enact laws to promote the health, morals, security, and welfare of the people. Broad discretion is vested in the governing body to determine for itself what is deleterious to health, morals, or is inimical to public welfare. However, the governing body does not possess plenary power to pass legislation that is arbitrary, oppressive, or so capricious that it has no reasonable basis. *Delight Wholesale Co. v. City of Prairie Village*, 208 Kan. 246, 249-50, 491 P.2d 910 (1971).

"To justify the State's assertion of its authority in behalf of the public, it must appear that the interests of the public require such interference; that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. Debatable questions as to reasonableness are not for the courts but for the legislature. Whether the regulation imposed by the act is reasonable depends upon such things as the nature of menace against which it will protect, the magnitude of the curtailment of individual rights affected, and the availability and effectiveness of other less drastic protective measures. *Goldblatt v. Hempstead*, 369 U.S. 590, 8 L. Ed. 2d 130, 82 S. Ct. 987 (1962)." 228 Kan. at 392.

In *Nicchia v. New York*, 254 U.S. 228, 65 L. Ed. 235, 41 S. Ct. 103 (1920), the United States Supreme Court recognized that local governmental bodies possess broad powers to regulate the ownership and possession of dogs within the community. The Court stated that an owner's property interest in dogs "is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right." 254 U.S. at 230. Exercise of the police power for the regulation of dogs within a community for the purpose of the protection of the public "does not amount to the taking of one man's property and giving it to another nor violate principles of due process." *Johnston v. Atlanta Humane Society*, 173 Ga. App. 416, 417, 326 S.E.2d 585 (1985). The Kentucky Court of Appeals recognized the "excellent qualities" of dogs' companionship, loyalty, and heroism in *Shadoan v. Barnett*, 217 Ky. 205, 210, 289 S.W. 204 (1926). Nonetheless, the court concluded:

"[N]otwithstanding his many virtues, he also has faults, on account of which the law, as we have seen, does not accord to him the full measure of protection extended to other articles of property, leaving his status and the regulations of his existence to be fixed by the legislature as it in its wisdom sees proper in the lawful exercise of its police power. In other words, because of his sometimes vicious and destructive qualities he has been regarded and recognized by the law

as only qualified property with the right in the legislature under the police power to prescribe regulations for his continued existence by either enlarging or abridging those recognized by the common law." 217 Ky. at 211.

In the present case, the district court found that pit bull dogs represented a unique hazard to the public safety, and the city ordinance regulating the ownership and possession of these dogs was therefore reasonably related to a legitimate governmental objective. The evidence introduced at trial supports this conclusion. Defendant city introduced expert testimony that pit bull dogs are both more aggressive and destructive than other dogs. Pit bull dogs possess a strongly developed "kill instinct" not shared by other breeds of dogs. This testimony indicated that pit bull dogs are unique in their "savageness and unpredictability." Research indicates that pit bull dogs are twice as likely to cause multiple injuries as other breeds of dogs.

Moreover, the injuries inflicted by pit bull dogs are far worse that those inflicted by other breeds. One witness, testifying as an expert on trauma injuries, testified that pit bull dog attacks inflicted injuries much more horrific than those in other dog attacks and were comparable, in his experience, only to those injuries inflicted in attacks by lions. The district court was also presented with a survey of 278 dog attacks indicating that a majority (54.1%) represented attacks by pit bull dogs. Of the 32 known human deaths in the United States due to dog attacks since July 1983, 23 were caused by attacks by pit bull dogs.

The district court correctly upheld the city ordinance as a valid exercise of the community's police power. The ordinance does not impermissibly infringe upon the substantive due process rights of the plaintiffs. The unique public health hazard created by the presence of pit bulls within the community justifies the city's attempt to regulate this breed of dog.

Noting the "inherent characteristics of aggression, strength, and unpredictability" of pit bull dogs, the New Mexico Court of Appeals reached a similar conclusion in *Garcia v. Village of Tijeras*, 108 N.M. at _____, 767 P.2d at 360. The Florida District Court of Appeal also agreed in *State v. Peters*, 534 So. 2d 760. The Florida court found that a local regulation requiring the purchase of a substantial amount of insurance by pit bull dog owners did not violate the owners' due process rights. Noting the "extensive power exercised by government to regulate animals," the court concluded that the insurance requirement was consti-

tutionally permissible. 534 So. 2d at 765. Since the government possesses such broad powers to regulate animals for the public welfare, and "it is likely that a governmental authority could ban pit bulls outright without offending the due process rights of the dog owner, a fortiori, less stringent regulations such as [the insurance requirement] would not so offend." 534 So. 2d at 765.

The plaintiffs next contend that the ordinance improperly infringes upon their right to the equal protection of the laws. They argue that the ordinance improperly singles out one breed of dog for regulation, a distinction they allege to be without a rational relationship to a legitimate governmental purpose.

The equal protection clause

" 'is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 616, 576 P.2d 221 (1978) (quoting *McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 81 S. Ct. 1101 [1961]).

As long as it does not infringe upon recognized fundamental interests, or involve a suspect classification, legislation must be upheld against an equal protection challenge so long as it possesses some reasonable basis. See *State ex rel. Schneider v. Liggett,* 223 Kan. at 616-17.

"In social and economic legislation, a statutory classification does not violate the equal protection clause merely because its classifications are imperfect. [Citations omitted.] Nor does the equal protection clause require a state 'to choose between attacking every aspect of a problem or not attacking the problem at all.' [Citations omitted.] The foregoing principle was well stated in *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 81 L. Ed. 703, 57 S. Ct. 578:

" '. . . This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature "is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest." If "the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." There is no "doctrinaire requirement" that the legislation should be couched in all embracing terms. . . .' (p. 400.)" *Brown v. Wichita State University,* 219 Kan. 2, 13, 547 P.2d 1015 (1976).

The United States Supreme Court discussed the constitutional power of legislatures to limit or regulate the ownership of dogs in *Sentell v. New Orleans & c. Railroad Co.,* 166 U.S. 698, 41 L. Ed. 1169, 17 S. Ct. 693 (1897). The Court stated:

"While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection, and, above all, for their natural companionship with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. . . .

"[T]hey have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several States." 166 U.S. at 701-02.

This court recognized the ability of the legislature to discriminate among types of dogs in *State, ex rel., v. City of Topeka*, 36. Kan. 76, 84, 12 Pac. 310 (1886):

"Under the almost unbroken current of authority we think that statutes and ordinances may be passed regulating, restricting, or even prohibiting the running at large of dogs in cities, and . . . that dogs in cities may be classified, and the owners, keepers or harborers thereof may be required to register all the dogs of one class and not the dogs of another class, and to pay a greater registration fee for the registration of the dogs of one class than for the registration of the dogs of another class; and . . . all this is constitutional and valid, and is 'due process of law'; and that by the same no one is denied 'the equal protection of the laws.' "

The equal protection rights of pit bull dog owners have been discussed by other courts. In *Garcia v. Village of Tijeras*, the New Mexico Court of Appeals rejected an equal protection challenge to an ordinance banning pit bulls. The court stated:

"[W]e find that the Village's classification, whereby owners of American Pit Bull Terriers are treated differently than owners of other breeds of dog, is not violative of either due process or equal protection. Where the challenged ordinance does not trammel fundamental rights or involve a suspect classification, the court presumes the constitutionality of the discriminatory classification. . . .

"[T]here is substantial evidence of record that American Pit Bull Terriers presented a special threat to the safety of the residents of the Village over and above that presented by other breeds of dog. A legislature or municipal governing body is entitled to address threats in a piecemeal fashion, countering each threat as it arises. [Citation omitted.] To satisfy equal protection tenets, it is not necessary that the Village address all potential threats from all breeds of dog; instead, the Village was entitled to address a phase of the problem that was of acute concern." 108 N.M. at _____, 767 P.2d at 360-61.

The United States District Court for the Eastern District of Pennsylvania also rejected an equal protection challenge to an ordinance regulating the keeping of pit bulls in *Starkey v. Chester Tp.*, 628 F. Supp. 196 (E.D. Pa. 1986). The court stated:

"The Township could reasonably determine, as it did, that Pit Bulls are dangerous. The Township's Health Officer testified that the regulation was necessary in this densely populated Township; the Pit Bull bites to kill without signal. The

Township does not have to regulate every dangerous animal at the same time in the same way to pass constitutional muster." 628 F. Supp. at 197.

*State v. Peters*, 534 So. 2d 760, also involved an equal protection challenge to an ordinance regulating the ownership of pit bull dogs. The court found that the local government "had no obligation to regulate *all* dogs when it regulated *some* dogs," 534 So. 2d at 764, since the government was not required to regulate all dogs at once. The court, quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 99 L. Ed. 2d 563, 75 S. Ct. 461 (1955), stated:

" 'The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.' " 534 So. 2d at 763.

The local government was not required to regulate all potentially dangerous dogs. The sole issue, therefore, was whether there was a rational basis for regulating pit bull dogs. The *Peters* court found that there was, noting the "ample evidence" to support the city's conclusion that pit bull dogs required regulation. 534 So. 2d at 764.

In another context, the Washington Supreme Court has also noted that a legislature may make valid discriminations between breeds in its regulation of dogs. In *McQueen v. Kittitas County*, 115 Wash. 672, 198 Pac. 394 (1921), the court stated:

"[S]ince dogs are a subject of the police power, we see no reason why the legislature may not make distinctions *between breeds*, sizes, and the localities in which they are kept. The object of the statute is protection. The purpose is to prevent injuries to persons and property by dogs. Any distinction, founded upon reason at least, is therefore valid . . . ." (Emphasis added.) 115 Wash. at 678.

As discussed above, pit bull dogs represent a unique public health hazard not presented by other breeds or mixes of dogs. Pit bull dogs possess both the capacity for extraordinarily savage behavior and physical capabilities in excess of those possessed by many other breeds of dogs. Moreover, this capacity for uniquely vicious attacks is coupled with an unpredictable nature. The trial court correctly concluded that the city ordinance did not violate the plaintiffs' equal protection rights.

The final issue raised by plaintiffs is whether the district court

erred in dismissing the plaintiffs' claim pursuant to 42 U.S.C. § 1983 (1982). Since the district court correctly concluded that the plaintiffs had not demonstrated that the city ordinance violated their constitutional rights, it did not err in dismissing their § 1983 claim for damages.

The judgment of the district court is affirmed.