HANS J. LILJEBERG, Judge.
^Plaintiff appeals the trial court’s judgment rendered on July 28, 2014, which dismissed plaintiffs claims against the remaining defendant in this matter. For the following reasons, we affirm.

*653
FACTS AND PROCEDURAL HISTORY

Plaintiff, Eileen Clare Lynch-Ballard, is a physician who was employed by Correct Care, Inc. (“Correct Care”) and working in the emergency room at East Carroll Parish Hospital in January of 2008. Dr. Lynch-Ballard’s employment with Correct Care terminated on June 21, 2008. On December 16, 2008, a medical malpractice complaint was filed against Dr. Lynch-Ballard and East Carroll Parish Hospital, alleging that on January 26, 2008, Dr. Lynch-Ballard committed medical malpractice during her treatment of a patient, William Fautheree, resulting in the loss of his leg and his subsequent death.[1]
Correct Care had in effect a professional liability insurance policy with Louisiana Medical Mutual Insurance Company (“LAMMICO”), which included | sDr. Lynch-Ballard as an additional insured. Pursuant to the terms of the insurance policy, LAMMICO retained an attorney, F. William Sartor, to represent Dr. Lynch-Ballard in the medical review panel proceedings.
On August 16, 2009, while the medical review panel proceedings were pending, the Louisiana State Board of Medical Examiners (“LSBME”) suspended Dr. Lynch-Ballard’s medical license indefinitely, finding that she failed to meet, the appropriate standard of care in her treatment of Mr. Fautheree and another patient. Based on the suspension of Dr. Lynch-Ballard’s license, as well as his own evaluation of the medical malpractice claim against Dr. Lynch-Ballard, Mr. Sartor believed that the case against her was “indefensible,” and he recommended that the matter be settled.
Although Dr. Lynch-Ballard opposed settlement, Correct Care and LAMMICO wanted to settle the case with the Fauth-eree claimants. A settlement agreement was reached,- under which LAMMICO would pay $90,000 on behalf of Dr. Lynch-Ballard and Correct Care, with the Fauth-eree claimants reserving their right to proceed against the Louisiana Patient’s Compensation Fund (“PCF”) for additional recovery. In January of 2010, LAMMI-CO reported the settlement to the National Practitioner Data Bank (“NPDB”), as required by, federal law. In the report, LAMMICO indicated that the. settlement was reached on December 18, 2009.
In January of 2010, Dr. Lynch-Ballard was notified in writing of the settlement. She contacted LAMMICO to voice her objection to the settlement,' asserting that the case was improperly settled without her consent and that the settlement damaged her reputation. She further demanded that her name be excluded from the settlement documents. On January 20, 2010, Mr. Sartor wrote to the attorney for the Fautheree claimants, John Hammons, and informed him that |4Pr. Lynch-Ballard’s name should be excluded, from the settlement documents. However, shortly thereafter, LAMMICO representatives instructed Mr. Sartor that the settlement documents had to include Dr. Lynch-Ballard’s name as a released party, because she was an insured under the LAMMICO policy.
In February of 2010, the Director of Claims for LAMMICO, Ross McBryde, emailed Dr. Lynch-Ballard to explain LAMMICO’s reasons for the settlement and to inform her that the insurance policy did not require her consent to settle after her employment with Correct Care ended. *654 In August of 2010, the PCF settled with the Fautheree claimants for $360,000, and the settlement was reported to the NPDB.
On December 15, 2011, Dr. Lynch-Ballard filed the present lawsuit against LAMMICO, Mr. Sartor, and his law firm, Nelson, Zentner, Sartor & Snellings, L.L.C., alleging fraud and asserting several causes of action, including breach of contract, various tort claims, and legal malpractice.[2] In her petition, among other claims, Dr. Lynch-Ballard asserted that LAMMICO breached its contractual obligations under the insurance policy by settling the case without her permission and including her name in the settlement documents, despite LAMMICO’s agreement not to include her name. She further claimed that LAMMICO breached its contractual obligations by failing to secure, or to advise her to obtain, separate counsel before settling the case on her behalf without her consent. Dr. Lynch-Ballard also alleged that she suffered mental anguish, loss of earnings, and loss of reputation due to LAMMICO’s reporting of the settlement to the NPDB.
On September 26, 2012, LAMMICO filed a “Peremptory Exception of Prescription, Peremptory Exception of No Cause of Action, and/or Motion for Summary Judgment.” In its pleading, LAMMICO asserted that Dr. Lynch-pBallard’s breach of contract claims should be dismissed, because under the terms of the insurance policy, LAMMICO was not required to obtain her consent to settle the claim after she was no longer employed by Correct Care and was not an insured under the policy. LAMMICO further asserted that Dr. Lynch-Ballard’s claims against it for damages resulting from LAMMICO’s inclusion of her name in the settlement documents and report of the settlement to the NPDB were barred by federal law. Finally, LAMMICO asserted that Dr. Lynch-Ballard’s tort claims had prescribed, because she filed this lawsuit more than one year after she became aware of the alleged tortious conduct.
After a hearing on January 24, 2013, the trial court rendered a judgment, granting LAMMICO’s motion for summary judgment and its exceptions of no right of action and prescription. Dr. Lynch-Ballard filed an appeal from this judgment. On November 19, 2013, this Court dismissed the appeal due to lack of appellate jurisdiction, finding that the judgment was not final because it did not dispose of all of Dr. Lynch-Ballard’s claims against LAM-MICO. This Court specifically indicated that the judgment did not dispose of Dr. Lynch-Ballard’s claim that LAMMICO breached the agreement to exclude her name from the settlement documents, or her claim that LAMMICO failed to secure, or advise her to obtain, separate counsel before settling her claims without her consent. This Court remanded the case to the trial court for further proceedings.
On remand, LAMMICO filed a “Peremptory Exception of No Right of Action and/or Motion for Summary Judgment,” seeking dismissal of the remaining claims against it. LAMMICO asserted that it had no obligation to retain separate counsel to represent Dr. Lynch-Ballard because it was not required to obtain her consent before settling the case. LAMMI-CO further alleged that there was no | (¡evidence to establish any agreement between LAMMICO and Dr. Lynch-Ballard to exclude her name from the settlement documents.
After a hearing on July 28, 2014, the trial court rendered a judgment in favor of *655 LAMMICO, granting its exceptions of no right of action and no cause of action, granting its motion for summary judgment, and dismissing all of Dr. LynchBal-lard’s claims against LAMMICO with prejudice. Dr. Lynch-Ballard appeals.

LAW AND DISCUSSION

On appeal, Dr. Lynch-Ballard asserts seven assignments of error. In her first assignment of error, she argues that the trial court erred in its finding that LAM-MICO did not breach its contractual duty to her by settling on her behalf without her consent. She cites a provision in the “Duty to Defend” section of the insurance policy providing, “[t]he Company will not settle any claim or suit without having first obtained the written consent of the insured.” She further cites language providing that LAMMICO shah not be obligated to obtain the insured’s consent to settle “if the insured is not a physician or surgeon.” She argues that because she is a physician, her consent was required.
Although the provisions quoted by Dr. Lynch-Ballard are present in the policy, there are additional provisions that must be considered. The entire “Duty to Defend” section of the LAMMICO insurance policy provides as follows:
The Company shall have the right and duty to defend any claim or suit against an insured seeking damages-because of such injury even if any of the allegations of the claim or suit are groundless, false, or fraudulent. The Company may make such investigation as it deems necessary. The Company will not settle any claim or suit without having first obtained the written consent of the insured.
The Company shall not be obligated to pay any claim or judgement [sic] or to defend any suit after the applicable limit of the Company’s liability has been exhausted by payment of judgements [sic] or settlements.
|7The foregoing paragraph notwithstanding, the Company shall not be obligated to:
a) appeal from any judgment rendered by a trial court, if the suit can be settled after the rendering of such judgment; or
b) obtain the insured’s consent to settle: (i) a suit after entry of a trial court judgement [sic] against the insured, (ii) a claim or suit after the death or final adjudication of legal incompetence of the insured, (iii) if the insured is not a physician or surgeon, (iv) when the insured cannot be located or does not respond to “Certified Mail, Return Receipt Requested” within fourteen (14) days of mailing to his or her most current address on file with the Company, or (v) after the insured involved in the claim is no longer paying premiums on a current primary professional liability policy with the Company or when coverage for the claim is provided under an extended reporting endorsement. (Emphasis added.)
At the time of the settlement, Dr. Lynch-Ballard was no longer employed by Correct Care, Inc., as her employment terminated in June of 2008. No premiums were being paid on a current professional liability insurance policy with LAMMICO by Dr. Lynch-Ballard or on her behalf at the time of the settlement in this matter.
An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1028. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, the courts must enforce the contract as written and may *656 make no-further interpretation in search :of the parties’ intent. Id.; La. C.C. art. 2046. Courts lack the authority to alter the terms of insurance contracts under the guise of .contractual interpretation when the policy’s provisions are couched in unambiguous terms. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Gas. Co., 93-911 (La.1/14/94), 630 So.2d 759, 764.
Summary judgment is particularly appropriate in the context of interpretation of insurance policy provisions. Espinosa v. Accor N. Am., Inc., 14-0001 (La.App. 4 Cir. 9/24/14), 148 So.3d 244, 249, writ denied, 14-2453 (La.2/13/15), 159 So.3d 467. The courts have-held that the interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on a motion,for summary judgment. Id.; Bernard v. Ellis, 11-2377, p. 9 (La.7/2/12), 111 So.3d 995, 1002; Bonin v. Westport Ins. Co., 05-886, p. 4 (La.5/17/06), 930 So.2d 906, 910. When a contract can be construed from the four comers of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Sims v. Mulhearn Funeral Home, Inc., 07-54 (La.5/22/07), 956 So.2d 583, 590.
In the present case, under the clear and unambiguous terms of the insurance policy, LAMMICO was not required to obtain Dr. Lynch-Ballard’s consent to settle the case, because she was no longer an insured paying premiums on a current primary professional liability policy with LAMMICO. Accordingly, LAMMICO did not breach its contractual duty to Dr. Lynch-Ballard by settling the case without her consent, and it was entitled to summary judgment on this issue. This assignment of error is without merit. ■
In her second' assignment of error, Dr. Lynch-Ballard argues- that the trial couit erred in finding that LAMMICO did not breach a second contractual, agreement by settling in Dr. Lynch-Ballard’s -name, after agreeing not to include her' name in the settlement documents.. She notes that in January of 2010, after LAMMICO and the Fautheree claimants entered into an agreement to settle, she threatened to sue LAMMICO for breach of contract and failure to defend her. Dr. Lynch-Ballard contends that LAMMICO agreed to exclude her name from the settlement documents, and she claims that the letter dated January 20, 2010 from Mr. Sartor to Mr. Hammons is evidence of this ^agreement. She asserts that the ^settlement documents did not originally contain Dr. Lynch-Ballard’s name, .but her name was later added .to the settlement, documents and judgment, in breach of their agreement. •
The trial court found that there was no evidence that LAMMICO and Dr. Lynch-Ballard entered into an agreement to exclude Dr. Lynch-Ballard’s name from the settlement documents. We agree- that there is an absence of evidence or factual support for Dr. Lynch-Ballard’s claim and .that summary judgment on this issue was appropriate.
In the January 20, 2010 letter from Mr. Sartor to Mr. Hammons; Mr. Sartor notes that Correct Care is the- named insured on the-LAMMICO policy, and-he indicates that the settlement should refer to the payment on behalf of Correct Care, not Dr. Lynch-Ballard. However, shortly thereafter, Janet Owen, a LAMMICO claims representative handling this case, informed Mr. Sartor, that, as an insured under the LAMMICO policy, Dr. Lynch-Ballard’s name must be included in the settlement documents as a released party. On February 6, 2010, Dr. Lynch-Ballard *657 ■wrote to Mr. Sartor arid Ms. Owen, expressing that she did not want her name in the settlement documents. This was after the January 20, 2010 letter allegedly showing an agreement between LAMMICO and Dr. Lynch-Ballard that her name would be left out of the settlement documents. The Director of Claims for LAMMICO, Ross McBryde, wrote to Dr.-Lynch-Ballard on February 15, 2010, and he explained that her name needed to be included in the settlement- documents in order to protect her from future claims by the Fautheree claimants.
A contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. Thus, an enforceable contract requires a meeting .of the minds. Read v. Willwoods Cmty., 14-1475, p. 5 (La.3/17/15), 165 So.3d 883, 887. Unless the law prescribes a certain formality for the intended [ lflcontract, offer and acceptance may be made orally, in writing, or by action or inaction that is clearly indicative of consent. La. C.C. art. 1927; Brackley & Voelkel Constr. v. 3421 Causeway, Ltd., 98-134, p. 5 (La.App. 5 Cir. 5/27/98), 712 So.2d 716, 719.
On a motion for summary judgment, the burden of proof remains with the movant. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but rather to point out that there is an absence of factual support for one or more of the essential elements to the adverse party’s claim, action, or defense. Id. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. Id.
In the present case, the record is devoid of any evidénce to show that LAMMICO made an agreement with Dr. Lynch-Ballard to exclude her name from the settlement doeuinents in this matter. The letter from Mr. Sartor to Mr. Hammons does not show an agreement between LAMMICO and Dr. LynchBallard to exclude her name or that Mr. Sartor had the authority -to bind LAMMICO to any such agreement. Further, after this letter was written, Dr. Lynch-Ballard contacted LAMMICO and demanded that her name be excluded from settlement docuriients, which lends support to the- conclusion that no1 agreement to exclude her name had been made with LAMMICO. Because Dr. Lynch-Ballard failed to provide any evidence in opposition to the motion for summary judgment to show that there is factual support for her claim, we agree with the trial court that LAMMICO is entitled to summary judgment on this issue. This. assignment of error is without merit.
|nIn her third assignment of error, Dr. Lynch-Ballard coritends that the trial court erred in finding that LAMMICO did not breach its contractual obligation to defend her by failing to provide separate counsel for her'after a conflict developed when she opposed settlement of the cáse.
After the medical malpractice complaint was filed against Dr. LynchBallard, LAM-MICO admitted insurance coverage and retained Mr. Sartor to represent her. The conflict of interest alleged by Dr. Lynch-Ballard arises from her disagreement with LAMMICO about whether the ease should be settled. As previously stated, pursuant to the terms of the insurance policy, LAM-MICO had the right to settle the matter, within the policy limits, without 'Dr. Lynch-Ballard’s consent. There was no conflict of interest in this matter for which LAMMICO was required to appoint new, separate counsel for Dr. Lynch-Ballard. Accordingly; this assignment of error is without merit. See Teague v. St. Paul *658 Fire & Marine Ins. Co., 06-1266 (La.App. 1 Cir. 4/7/09), 10 So.3d 806, writ denied, 09-1030 (La.6/17/09), 10 So.3d 722.
In her fourth assignment of error, Dr. Lynch-Ballard asserts that the trial court erred in finding that LAMMICO did not breach its contractual duty by failing to properly defend her before the medical review panel and by dismissing the proceedings. She complains that Mr. Sartor had a duty to defend her in the medical review panel proceedings, but he failed to submit any evidence to the panel in her defense. She also argues that when LAM-MICO dismissed the medical review panel after a settlement had been reached, he failed to notify her so that she could retain separate counsel to defend her.
In Teague, supra, the First Circuit addressed a similar issue and cited a case from the Kansas Supreme Court, Harrison v. Long, 241 Kan. 174, 734 P.2d 1155 (Kan.1987), in which a medical malpractice claim had been settled without the | ^physician's consent and the physician alleged that this deprived him of the “property right” to defend himself in court. The Kansas Supreme Court held that a “defendant has no constitutionally protected right to require that a plaintiffs action continue for the sole purpose of allowing the defendant to vindicate himself.” Teague, 10 So.3d at 842.
In the present case, we find that- because the matter was settled, LAMMICO did not have a duty to go forward with the medical review panel proceedings- and to continue to defend Dr. Lynch-Ballard from the allegations in the medical malpractice complaint. We- are unaware of any provision in the insurance policy or the law that gives a party the right to continue to defend herself or her reputation in a medical malpractice proceeding after settlement.
With regard to Dr. Lynch-Ballard’s complaint that. Mr. - Sartor did not submit any evidence to the medical review panel in her defense, it was his opinion that the case 'was “indefensible,” and he contends that Dr. Lynch-Ballard failed to cooperate or assist him in defense of the case. Further, we note that Dr. LynchBallard’s claims against Mr. ■ Sartor for legal malpractice have already been dismissed as perempted. This assignment of error is without merit.
In her fifth assignment of error, Dr. Lynch-Ballard argues that the trial court erred in finding that, under 42 U.S.C.S. § 11131, LAMMICO is exempt from any liability resulting from LAMMI-CO’s report of the settlement to the NPDB. She notes that an entity can be held liable if it had knowledge that the report was false. She claims that the report in this case was false and that LAMMICO was in bad faith, because a settlement had not been reached when the report was made.
On January 4, 2010, LAMMICO reported a $90,000 settlement on behalf of Dr. Lynch-Ballard to the NPDB. Dr. Lynch-Ballard claims that this report has _Jjjharmed her reputation, caused mental anguish, and has caused loss of employment opportunities.
LAMMICO was required to report this settlement to the NPDB, pursuant to the Healthcare and Quality Improvement Act, 42 U.S.C.S. § 11101, et seq. This Act provides that when an insurance company makes payment under a policy of insurance in order to settle a medical malpractice claim, the insurance company must report the name of the physician or licensed health care practitioner for whose benefit payment is made, along with the amount of settlement and other information, to the NPDB. 42 U.S.C.S. § 11131(b). Failure to do so shall subject *659 the insurance company to a penalty up to $10,000. 42 U.S.C.S. § 11131(c).
The Act further provides that no entity shall be hable in a civil action with respect to any report made under the Act, unless it had knowledge that the information in the report was false. 42 U.S.C.S. § 11137(c). Finally, the Act provides that a payment in settlement of a medical malpractice claim shall not be construed as creating a presumption that medical malpractice occurred. 42 U.S.C.S. § 11137(d).
The record shows that LAMMICO’s report of the $90,000 settlement on Dr. Lynch-Ballard’s behalf was not false and that it accurately reflected the settlement reached in this matter. We have considered Dr. Lynch-Ballard’s arguments pertaining to the timing of the settlement and reporting, and we find no basis for relief on this issue. Even if the settlement had been prematurely reported to the NPDB, as alleged by Dr. Lynch-Ballard but denied by LAMMICO, we can see no damage resulting from the timing of the report. We further note that the PCF settled the claims against it for $360,000 on August 16, 2010, and it also reported this settlement on behalf of Dr. Lynch-Ballard to the NPDB. We find no merit in this assignment of error.
li4In her sixth assignment of error, Dr. Lynch-Ballard contends that the trial court erred by ignoring her claims of fraud, and she claims that the doctrine of contra non valentum applies in this matter due to LAMMICO’s fraud. One of Dr. Lynch-Ballard’s primary assertions of fraud involves her claim that LAMMICO fraudulently agreed to exclude her name from the settlement documents and later breached this agreement by adding her name to the documents.
La. C.C. art. 1953 defines fraud as “a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” Based on the record before us, we find that Dr. Lynch-Ballard has not shown that LAMMICO committed fraud or that the doctrine of contra non valen-tum applies in this matter. Accordingly, this assignment of error is without merit.
Finally, in her seventh assignment of error, Dr. Lynch-Ballard argues that the trial court erred in finding that prescription had tolled on her contract claims. She argues that the prescriptive period for claims arising from breach of contract is ten years and thus, her contract claims are still viable.
In its exception of prescription, LAM-MICO asserted that Dr. LynchBallard’s claims for emotional distress, loss of reputation, and loss of business opportunity are tort claims that are subject to a prescriptive period of one year. They further argued that Dr. Lynch-Ballard failed to timely file suit within this prescriptive period. The trial court granted LAMMI-CO’s exception of prescription and dismissed Dr. Lynch-Ballard’s tort claims. The trial court did not rule that prescription had tolled on her contract claims. Rather, the contract claims were dismissed on other grounds, as previously noted. Accordingly, this assignment of error is without merit.

JmPECREE

For the foregoing reasons, we affirm the trial court’s judgment rendered on July 28, 2014, dismissing plaintiffs claims with prejudice.

AFFIRMED

. A medical malpractice complaint was originally filed against Dr. Lynch-Ballard and East Carroll Parish Hospital on November 14, 2008. However, it was amended by the filing of the December 16, 2008 complaint.

. Dr. Lynch-Ballard’s claims against Mr. Sartor and his law firm were dismissed on July 27, 2012, when the trial court granted their exception of peremption.